UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| GLENDA ANDERSON, Administrator of the Estate of CORA LEE CAMERON, deceased, GLENDA ANDERSON, CAROL ALLEN, and SHELIA BROWN, individually and as daughters of said deceased, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 1:05-cv-294 |
| KINDRED HOSPITAL, and KATHY DAY, | ) ) Judge Mattice ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Before the Court are Defendant Kindred Hospital's and Kathy Day's Motions for Summary Judgment (Court Docs. 70, 75). In its Memorandum and Order of October 29, 2007 (Court Doc. 158), the Court reserved ruling on these motions and ordered the remaining parties to submit briefs on the issue of whether potential liability under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, ends when a hospital admits in good faith a patient as an inpatient. The parties have briefed the issue. For the reasons set forth below, the Court will **GRANT** summary judgment to Defendant Kindred and will **DECLINE** to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

I. **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)*; see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the

burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. RELEVANT FACTS

The following facts are not in dispute.

Decedent, Ms. Cora Cameron, was admitted to Defendant Kindred for hemodialysis and rehabilitation. (Court Doc. 1-4, Compl. ¶ 12.) Decedent was relatively stable at this time. (*Cf.* Court Doc. 164, Def. Kindred Hospital's Supplemental Mem. in Supp. of Mot. Summ. J. 2; Court Doc. 176, Pls.' Second Reply Br. to Kindred's Mot. Summ. J. 6 ("[A]s stated by Kindred . . . and conceded by Plaintiffs, the patient was relatively stable when she was admitted" to Kindred.)) After 17 days, Decedent developed an emergent condition. (Compl. ¶ 17; Def. Kindred Hospital's Supplemental Mem. in Supp. of Mot. Summ. J. 2). After Kindred's staff informed Plaintiffs that it could not perform dialysis on Decedent until the following day, "Plaintiffs . . . demanded that [Decedent] be taken by ambulance to Memorial Hospital for [immediate] stabilization and dialysis. An order for transportation was obtained" and Decedent was transported to Memorial Hospital by ambulance. (Court Doc. 1-4, Compl. ¶ 17.)

## III. ANALYSIS

The United States Congress has delegated to the United States Department of Health and Human Services ("DHHS") the authority to promulgate regulations implementing the EMTALA. *See* 42 U.S.C. § 1302(a) and 1395hh. In accordance with

this authority, the DHHS has stated that "[i]f the hospital admits the individual as an inpatient [in good faith] for further treatment, the hospital's obligation under [the EMTALA] ends . . . ." 42 C.F.R. § 489.24(a)(1)(ii); *see* 42 C.F.R. § 489.24(d)(2).

To determine the extent to which this regulation binds the Court, the Court must first determine whether the regulation is merely interpretive, or rather substantive or legislative in nature. Interpretive regulations "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)). Conversely, a legislative regulation "has the force of law . . . ." *State of Ohio Dep't of Human Servs. v. United States Dep't of Health & Human Servs.*, 862 F.2d 1228, 1233 (6th Cir. 1988) (quoting *Guardian Fed. Sav. & Loan v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 664-65 (D.C. Cir. 1978)).

> In order to determine whether a particular [regulation] is a binding rule or a general, non-binding policy statement, courts must examine both the language of the statement and the purpose it serves. If a pronouncement implements a statute by enacting a legislative-type rule affecting individual rights and obligations, it is likely to be a substantive rule. A [regulation] is also likely to be considered binding if it narrowly circumscribes administrative discretion in all future cases, and if it finally and conclusively determines the issues to which it relates.

*Dyer v. Sec'y of Health and Human Servs.*, 889 F.2d 682, 685 (6th Cir. 1989) (internal quotations omitted). In other words, legislative regulations " 'grant rights, impose obligations, or produce other significant effects on private interests,' while interpretive rules do not 'foreclose alternative courses of action or conclusively affect rights of private parties.' " *State of Ohio Dep't of Human Servs.*, 862 F.2d at 1233 (quoting *Batterton v. Marshall*, 648 F.2d 694, 701-02 (D.C. Cir. 1980)).

The regulation at issue here is clearly legislative or substantive in nature. By delineating the boundaries of liability under the EMTALA, the regulation "conclusively affect[s] the rights of private parties." *Id.*; *see Morgan v. N. Miss. Med. Ctr., Inc.*, 458 F. Supp. 2d 1341, 1350 (S.D. Ala. 2006) (applying as binding the regulation at issue without analyzing its validity); *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046, 1054 (E.D.Mo. 2005) (same); *Prickett v. Hot Spring County Med. Ctr.*, No. 6:07-CV-6050, 2007 WL 2926862, at *3 (W.D. Ark. Oct. 5, 2007) (same). *Contra Lima-Rivera v. UHS of Puerto Rico, Inc.*, 476 F. Supp. 2d 92, 97-98 (D.P.R. 2007) (finding the regulation at issue interpretive in nature without analysis or explanation, and then refusing to apply the regulation). Thus, if valid, this regulation has the force of law. *Id.*

The Court must next determine whether the regulation is a valid exercise of delegated congressional authority, as is required by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

> The Supreme Court has established a two-step process for reviewing an agency's interpretation of a statute that it administers. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. The Supreme Court has explained that the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.
>
> Second, if we determine that Congress has not directly addressed the precise question at issue, that is, that the statute is silent or ambiguous on the specific issue, we must determine whether the agency's answer is based on a permissible construction of the statute. In assessing whether the agency's construction is permissible, we need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading we would have reached if the question initially had arisen in a judicial proceeding. In fact, the agency's construction is entitled to deference unless arbitrary, capricious, or manifestly contrary to the statute.

*Clark Reg'l Med. Ctr. v. United States Dept. of Health and Human Servs.*, 314 F.3d 241, 244-245 (6th Cir. 2002) (internal citation, quotations, and alterations omitted).

Plaintiffs argue that Congress has directly spoken on whether a hospital may be liable under the EMTALA to patients admitted in good faith. Plaintiffs contend that while the screening and stabilization requirements apply to an "individual [who] . . . comes to a hospital," *see* § 1395dd(a) and (b)(1), the transfer requirement applies to "an individual at a hospital . . . " § 1395dd(c)(1). Therefore, Plaintiffs conclude, Congress meant to apply § 1395dd(c) to all persons at the hospital, regardless of whether they have been admitted as inpatients. Plaintiff's argument fails, however, in light of the construction of the EMTALA endorsed by the United States Court of Appeals for the Sixth Circuit. Section 1395dd(b) and (c) "are to be read together, creating only a single duty on the part of the hospital to stabilize patients who have emergency medical conditions before they may be transferred." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 786 (6th Cir. 2003). Under the Sixth Circuit's interpretation, then, § 1395(b)(1)'s "comes to a hospital" language could just as easily apply as § 1395(c)(1)'s "at the hospital" language in demarcating the duration of the single duty imposed by § 1395(b) and (c). *See Roberts ex rel. Johnson*, 325 F.3d at 786. Accordingly, the Court declines to find that "Congress has directly spoken to the precise question at issue," *Clark Reg'l Med. Ctr.*, 314 F.3d at 244, that is, whether EMTALA liability ends upon a hospital admitting a patient in good faith.

Second, the Court concludes that the regulation at issue "is based on a permissible construction of the statute." *Id.* at 245. Nothing within the Act's text contradicts or is incompatible with the regulation at issue. The regulation at issue is

fully compatible with the purpose, as well as the text, of the EMTALA. The EMTALA was enacted to prevent "patient dumping," or the practice of refusing to admit or summarily transferring a patient based on a perceived inability to pay for hospital services. *See Cherukuri v. Shalala*, 175 F.3d 446, 448 (6th Cir. 1999); *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir. 1990). The EMTALA "was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence." *Estate of Taylor v. Paul B. Hall Reg'l Med. Ctr.*, 182 F.3d. 918, 1999 WL 519295, at *2 (6th Cir. 1999) (internal quotations omitted). After a patient has been admitted in good faith as an inpatient, professional (i.e., doctor-patient) and fiduciary (i.e., hospital-patient) duties attach to the situation. State law is perfectly adept at delineating and enforcing these duties; the EMTALA is neither necessary nor intended to enforce them. *See id.* ("an EMTALA claim is not a substitute for a state law medical malpractice action") (internal quotations and alterations omitted). Accordingly, the Court holds that the regulation at issue is neither "arbitrary, capricious, [nor] manifestly contrary to" the EMTALA. *Clark Reg'l Med. Ctr.*, 314 F.3d at 245. Accordingly, the Court finds the regulation at issue is a valid exercise of delegated congressional authority.[1]

## IV.    CONCLUSION

As 42 C.F.R. § 489.24(a)(1)(ii) and (d)(2) are both a valid exercise of congressional authority and are legislative in nature, this regulation has the force of law,

---

[1] The Court does note that the Sixth Circuit has stated that, under the EMTALA, "once a patient is found to suffer from an emergency medical condition in the emergency room, she cannot be discharged until the condition is stabilized, regardless of whether the patient stays in the emergency room." *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1134 (6th Cir. 1990). This language, however, is dicta, *Cleland*. 917 F.2d at 271 n.2, and is therefore not binding precedent. *Re/ Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 643 (6th Cir. 2001) (holding that language in an opinion that is dicta is not binding in subsequent cases). Further, the Court does not find this dicta persuasive, given its analysis of the regulation at issue above, and the fact that it was promulgated after *Thornton*.

and controls the instant situation: "[i]f the hospital admits the individual as an inpatient [in good faith] for further treatment, the hospital's obligation under [the EMTALA] ends . . . " *Id.* As it is undisputed that Defendant Kindred admitted Decedent as an inpatient, and nothing in the record suggests—indeed, Plaintiffs have not even pled—that Defendant Kindred did not admit Decedent in good faith, the Court **GRANTS** Defendant Kindred's Motion for Summary Judgment [Court Doc. 70] as to Plaintiffs' EMTALA claim, which is **DISMISSED WITH PREJUDICE**. As only state-law claims remain, the Court **DECLINES** to exercise jurisdiction over these claims pursuant to 26 U.S.C. § 1367(c)(3).[2]

SO ORDERED this 24th day of March, 2008.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Although in their Complaint, Plaintiffs allege that "[t]here exists diversity of citizenship among the litigants herein" (Compl. ¶ 7), this assertion is false. According to the Complaint, Defendant Day is a citizen of the State of Georgia, as are Plaintiffs. (*See id.* ¶¶5-6.) Accordingly, complete diversity does not exist, and the Court does not have original jurisdiction, pursuant to 26 U.S.C. § 1332, over Plaintiffs' state-law claims. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).